UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES EVERETT, #359049,

        Petitioner,

v.                           CASE NO. 07-14563
                                   HONORABLE ANNA DIGGS TAYLOR

MILLICENT WARREN,

        Respondent.

_____/

### OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION,
### BUT GRANTING IN PART A CERTIFICATE OF APPEALABILITY AND
### GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Petitioner James Everett has filed a *pro se* application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. The habeas petition challenges Petitioner's Wayne County conviction for second-degree murder. Respondent argues in an answer to the petition that Petitioner's claims are barred from substantive review by his failure to raise the claims on direct review of his conviction. The Court agrees that Petitioner's claims are procedurally defaulted. Accordingly, the petition will be denied.

## I. Background

Petitioner was charged with second-degree murder and possession of a firearm during the commission or attempt to commit a felony. The charges arose from the fatal shooting of Latesha Lewis in Detroit early on December 23, 1995. The evidence at trial established that, in the latter part of 1995, Petitioner, Kelly Nobles, Earnest Dickerson, and Christopher May were friends, who sold cocaine out of a house on Faircrest Street in Detroit. At some point, Petitioner had a dispute with Earnest Dickerson and Kelly

Nobles. On or about December 22, 1995, Petitioner and Christopher May were outside selling drugs when Earnest Dickerson told Petitioner that he could not be doing that. Petitioner replied that he had started the enterprise and that he had a right to be doing it there. Dickerson then went in the house, came out with a rifle, and started shooting at Petitioner. Some of the gunshots hit Petitioner's car. Petitioner became angry and said that something had to be done.

Christopher May subsequently saw Petitioner on Faircrest Street with two other men. He was armed with an AK-47 rifle, and he said that they were going to shoot up the house and throw cocktails (firebombs) in the back of the house. Petitioner warned Ms. Lewis, who sold drugs out of the house on Faircrest Street, to stay away from there. He also asked Ms. Lewis's sister and another person to warn Ms. Lewis to get out of the house. The reason he gave for the warning was that he was going to "plug the house up," which meant that he intended to shoot it up. That same night, the house was shot up and Ms. Lewis was killed by four gunshots as she was lying on a couch on the first floor. Earnest Dickerson was upstairs and returned fire.

Kelly Nobles, who spent the night in the house, saw Petitioner ride slowly by the house in his car moments after the shooting. Petitioner was seated in the front passenger seat. His cousin, Charlie Grace, was driving the car, and there were unidentified people in the back seat. Mr. Nobles concluded that the gunshots had come from Petitioner's car, and he informed the police that Petitioner had shot up the house. Petitioner acted surprised the next day when he learned that Ms. Lewis was dead. He disappeared from Detroit shortly afterward.

Petitioner's defense was that he was in Albany, New York at the time of the shooting. He produced three witnesses (his mother, brother, and sister), who testified that they picked him up in Detroit on or about December 16, 1995, and took him to New York for his niece's first birthday party. They claimed that Petitioner remained in New York until February or March of 1996 and then moved to Mississippi.

Petitioner was charged with the crime about a year after it occurred, and his trial commenced three years after the arrest warrant was issued. On November 24, 1999, a Wayne County Circuit Court jury acquitted Petitioner of the felony firearm charge, but found him guilty of murder in the second degree, Mich. Comp. Laws § 750.317. The trial court sentenced Petitioner to imprisonment for twenty-five to fifty years.

On direct appeal from his conviction, Petitioner alleged through counsel that: (1) the trial court erred by admitting evidence that Petitioner was "on the run" at the time of the crime; (2) the trial court erred by giving a jury instruction on flight; (3) the trial court failed to instruct the jury on voluntary manslaughter; alternatively defense counsel was ineffective for failing to argue how the instruction was supported by the facts; and (4) the sentence was disproportionate to the offense and to the offender. The Michigan Court of Appeals found no merit in these claims and affirmed Petitioner's conviction in an unpublished, *per curiam* opinion. *See People v. Everett*, No. 225986 (Mich. Ct. App. May 31, 2002). Petitioner raised the same claims in an application for leave to appeal in the Michigan Supreme Court. On February 28, 2003, the state supreme court denied leave to appeal because it was not persuaded to review the issues. *See People v. Everett*, 658 N.W.2d 486 (Mich. 2003).

Petitioner subsequently raised all his habeas claims in a motion for relief from judgment. The trial court denied his motion, and the Michigan Court of Appeals denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Everett*, No. 270063 (Mich. Ct. App. Nov. 9, 2006). On October 17, 2007, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Everett*, 739 N.W.2d 625 (Mich. 2007).

Petitioner filed his habeas corpus petition on October 25, 2007. His claims are:

I.      Appellant James Everett's convictions should be vacated since they were obtained in violation of his constitutional right to a speedy trial.

II.     Appellant Everett's conviction for murder in the second degree should be vacated where the charge was not brought to trial within 120 days or 180 days pursuant to the Interstate Agreement on Detainers Act (IAD) and appellant was returned to the original place of imprisonment in violation of the anti-shuttling provisions of the IAD and his right to a speedy trial.

III.    The Wayne County prosecutor's decision not to bring appellant Everett to trial within the 120 days as mandated by the Interstate Agreement on Detainers Act (IAD) on the original state warrant requires the vacating of his murder in the second degree conviction obtained in violation of his right to a speedy trial.

IV.     Appellant James Everett was denied his right to effective assistance of counsel guaranteed him by the federal and state constitutions at trial and seeks an evidentiary hearing pursuant to *People v. Ginther*, 390 Mich. 473 (1973) and a new trial.

V.      Appellant Everett was denied a fair jury trial by the judge's lack of impartiality at trial contrary to both the federal and state Constitutions.

VI.     The prosecutor's misconduct through the trial violated defendant James Everett's right to due process of law and a

fair trial as guaranteed by both the federal and state constitutions.

VII.    The trial court's erroneous jury instruction deprived appellant Everett of his due process right to a properly instructed jury and a fair trial.

VIII.   Appellant Everett's conviction of guilty for murder in the second degree should be vacated since the guilty verdict was against the great weight of the evidence.

IX.     The evidence was insufficient as a matter of law to support defendant James Everett's conviction for murder in the second degree as required by the Due Process Clause.

X.      The trial court clearly erred in finding the prosecution used due diligence . . . to produce endorsed res gestae [witness] Lisa Ward at trial and refus[ing] a due process hearing on another missing res gestae witness Earnest "Jodie" Dickerson and denied defendant Everett of a fair trial.

XI.     Appellant Everett was denied his right to a fair trial in violation of due process where the court allowed the prosecutor to use rebuttal testimony to interject irrelevant and prejudicial evidence.

XII.    Appellant James Everett is entitled to relief from judgment where he is actually innocent of the murder charge and his appellate counsel de[prived] him of his right to effective assistance of counsel under the Sixth and Fourteenth Amendments.

## II. Procedural Default

Respondent contends that Petitioner's claims are procedurally defaulted because he failed to raise the claims on direct appeal from his conviction. A claim is procedurally defaulted and may not be considered by a federal court on habeas review "[w]hen a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available or due to a state procedural rule that prevents the state

-5-

courts from reaching the merits of the petitioner's claim." *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977), and *Picard v. Connor*, 404 U.S. 270, 275-80 (1971)). Three elements must be satisfied before a claim may be considered procedurally defaulted: "(1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

### A. The State Procedural Rule

Michigan Court Rule 6.508(D) is the state procedural rule at issue here. Subsection 3 of this rule prohibits state courts from granting relief from judgment if the defendant alleges nonjurisdictional grounds that could have been raised on appeal from the conviction. An exception exists when the defendant demonstrates "good cause" for the failure to raise such grounds on appeal and "actual prejudice from the alleged irregularities." Mich. Ct. R. 6.508(D)(3)(a) and (b). Petitioner violated this rule by failing to raise the majority of his habeas claims on direct review of his conviction. The only habeas claim that Petitioner raised on direct appeal from his conviction is his claim that the trial court should have instructed the jury on manslaughter. He raised all his other claims for the first time in his motion for relief from judgment.

The state courts, moreover, enforced Rule 6.508 on state collateral review of Petitioner's conviction. The trial court, the Michigan Court of Appeals, and the Michigan Supreme Court rejected Petitioner's claims on the basis of Rule 6.508(D). The state

courts' reliance on Rule 6.508(D) is a sufficient basis for this Court to conclude that the orders were based on a state procedural bar. *Burroughs v. Makowski*, 282 F.3d 410, 413-14 (6th Cir. 2002).

When deciding whether a state procedural ruling was an adequate and independent state ground foreclosing review of a federal constitutional claim, courts must ask "whether the state rule in question was firmly established and regularly followed." *Beard v. Kindler*, __ U.S. __, __, 130 S. Ct. 612, 617-18 (2009) (quotation marks and citation omitted). Rule 6.508(D) was enacted before Petitioner appealed his convictions, and "[i]t is well-established in this circuit that the procedural bar set forth in Rule 6.508(D) constitutes an adequate and independent ground on which the Michigan courts may rely in foreclosing review of federal claims." *Akrawi v. Booker*, 572 F.3d 252, 261 (6th Cir. 2009) (citing *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005)).

To summarize, all three elements of a procedural default are present in this case. There is an applicable state procedural rule; Petitioner violated the rule; the state courts enforced the rule by relying on it to deny relief; and the rule was an adequate and independent basis for the state court rulings. Petitioner therefore must show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

**B. "Cause"**

Petitioner asserts that his first appellate attorney was "cause" for his failure to raise his habeas claims in the appeal of right. Constitutionally ineffective assistance of counsel is "cause" for a procedural default, but "[a]ttorney error short of ineffective

assistance of counsel . . . does not constitute cause and will not excuse a procedural default." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 486-88 (1986)). To prove that an attorney was constitutionally ineffective, a petitioner must show that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Webb v. Mitchell*, 586 F.3d 383, 398 (6th Cir. 2009) (applying *Strickland* to claims about appellate counsel and citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)), *petition for cert. filed* (U.S. Feb. 1, 2010) (No. 09-7207).

The "deficient performance" prong requires showing that appellate counsel made an objectively unreasonable decision to raise issues other than the petitioner's claims. In other words, Petitioner must show that his claims are clearly stronger than the issues counsel did raise in the appeal of right. *Thompson v. Warden, Belmont Corr. Inst.*, Nos. 08-3743 and 08-3744, __ F.3d __, __, 2010 WL 957749, at *3 (6th Cir. Mar. 18, 2010) (quoting *Webb*, 586 F.3d at 399) (quoting *Robbins*, 528 U.S. at 285 & 288).

To demonstrate prejudice, Petitioner must show a reasonable probability that, but for his attorney's unreasonable failure to raise his claims on appeal, he would have prevailed. *Id.* (quoting *Robbins*, 528 U.S. at 285). "Furthermore, when reviewing the actions of appellate counsel, '[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Id.* (quoting *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Strickland*, 466 U.S. at 689)).

## 1. The Speedy Trial Claims

The first three habeas claims challenge Petitioner's conviction on the basis of the prosecutor's delay in bringing him to trial. Petitioner asserts that the "anti-shuttling" and "speedy trial" provisions of the Interstate Agreement on Detainers and his constitutional right to a speedy trial were violated.

Alleged violations of the Interstate Agreement on Detainers generally are not cognizable in a habeas petition filed under 28 U.S.C. § 2254. *Curtis v. United States*, 123 Fed. Appx. 179, 184 (6th Cir. 2005) (citing *Metheny v. Hamby*, 835 F.2d 672 (6th Cir. 1987), and *Mars v. United States*, 615 F.2d 704 (6th Cir. 1980)); *see also Browning v. Foltz*, 837 F.2d 276, 283 (6th Cir. 1988). However, Petitioner possessed a constitutional right to a speedy trial under the Sixth Amendment to the United States Constitution. *Barker v. Wingo*, 407 U.S. 514, 515 (1972). Pursuant to *Barker*, "a court should consider four factors in analyzing whether a defendant's right to a speedy trial was violated: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Girts v. Yanai*, No. 08-4592, __ F.3d __, __, 2010 WL 1170656, at *9 (6th Cir. Mar. 29, 2010) (citing *Barker*, 407 U.S. at 530).

In *Barker*, the Supreme Court found no violation of the right to a speedy trial even though the defendant was tried more than five years after his arrest. Petitioner's trial, in contrast, commenced three years after a warrant was issued for his arrest. He maintains, however, that he requested a trial and that the delay in trying him was solely the fault of the prosecution.

Even if the Court were to accept Petitioner's allegations as true, "[a] showing of prejudice is required to establish a violation of the Sixth Amendment Speedy Trial Clause," *Reed v. Farley*, 512 U.S. 339, 353 (1994), and that element is missing here.

Petitioner alleges that his defense was impaired by the four-year delay between the crime and trial. However, he was able to present three witnesses in support of his alibi defense, and even though he contends that his witnesses did not appear credible under intensive cross-examination, he admits that the witnesses' lapses in memory pertained to minor details, such as the make of the car that they used to transport him from Michigan to New York.

Petitioner further alleges that it was difficult to find corroborating witnesses in Detroit four years after the crime. He notes that *res gestae* witnesses Earnest Dickerson and Lisa Ward could not be located.

Dickerson informed the police that he had heard Petitioner planned to do something to the house on Faircrest Street That same night, Dickerson happened to look out the back window of the house. He saw "Chris" in the backyard holding a pistol. According to Dickerson, "Chris" fired his pistol at Dickerson, who grabbed an AK-47 and shot back. "Kelly" had an SK and also shot a gun from inside the house.

Dickerson in all likelihood would not have been a favorable witness for the defense because he implicated Petitioner in the crime by stating that Petitioner planned to do something to the house. Dickerson's comment that someone fired a gun from the back of the house was not particularly helpful either, because it did not rule out the possibility that Petitioner fired into the front of the house where most of the damage was visible.

Lisa Ward informed the police that Latesha Lewis's sister had come to the house and warned Ms. Lewis that Petitioner "was going to do something." Later that night, Ms. Ward heard shooting. "Kelly" and "Jody" woke up and started shooting back. After a

long time the shooting stopped, and Ms. Lewis was unresponsive. This evidence was not beneficial to Petitioner because, once again, it implicated Petitioner in the crime. Ms. Ward's statement that two people in the house "shot back" indicates that any shooting from inside of the house was a reaction to, not the cause of, shooting from the outside of the house.

Neither Dickerson, nor Ward, would have helped Petitioner's alibi defense. Therefore, Petitioner has failed to show that any serious prejudice resulted from the delay in trying him. Consequently, appellate counsel was not ineffective for failing to raise Petitioner's speedy trial claims in the appeal of right.

### 2. Trial Counsel

The fourth habeas claim alleges that Petitioner was denied his right to effective assistance of trial counsel. Petitioner claims first that his attorney should have filed pretrial motions regarding violations of the Interstate Agreement on Detainers and the right to a speedy trial. This contention lacks merit because Petitioner has not shown that he was seriously prejudiced by the failure to try him sooner.

Petitioner claims next that his attorney should have moved to exclude irrelevant and prejudicial evidence, such as aliases, items seized during the execution of a search warrant at his home, and the fact that he abandoned a dog when he left the State. Petitioner's only objection to the admission of this evidence is that it was prejudicial and irrelevant. The evidence may have been prejudicial, but it was not irrelevant. It was indicative of a consciousness of guilt and a desire to evade notice by the authorities. Thus, it is unlikely that counsel would have prevailed if he had moved to exclude the evidence.

Petitioner faults his attorney for not articulating a defense theory, but defense counsel indicated in his opening statement that Petitioner was hundreds of miles away when the crime was committed. (Tr. Nov. 17, 1999, at 24-26). Although counsel was not always articulate in summarizing the defense theory, the prosecutor took pains to disprove the alibi defense, and defense counsel maintained in his closing argument that his witnesses were more credible than the prosecution witnesses. The jury could not have had any doubt that the defense was that Petitioner was elsewhere when the crime occurred.

Petitioner claims that his trial attorney should have demanded production of all *res gestae* witnesses. However, he has not demonstrated that the missing res gestae witnesses would have helped the defense.

Petitioner alleges next that his trial attorney should have objected to the trial court's refusal to hold a due diligence hearing concerning Earnest Dickerson. Dickerson was not an endorsed witness and would not have provided substantial support for the defense theory. *See supra* Part II.B.1. Therefore, defense counsel was not ineffective for failing to object to the lack of a due diligence hearing concerning Earnest Dickerson,

Petitioner asserts that this attorney should have objected to the prosecution's misconduct, including improper use of the sole rebuttal witness. Defense counsel made frequent objections to the prosecutor's comments and questions. Although he did not object to the prosecution's use of a rebuttal witness, he did thoroughly cross-examine the witness. Furthermore, it is unlikely that defense counsel would have prevailed if he had argued that the prosecution could not produce the witness, because Petitioner admits that the evidence could have been admitted in the prosecution's case in chief.

Petitioner notes that his attorney failed to object to the trial court's jury instructions, including a comment that discouraged the re-reading of witnesses' testimony. The court's instructions, including the instruction that the jurors should rely on their collective memories, were proper. The trial court did not completely foreclose a re-reading of testimony; instead, the court stated that it would arrange to have the requested testimony read back to the jurors if they could not collectively recall whatever it was that they were trying to ascertain. (Tr. Nov. 24, 1999, at 25-26.)

For all the foregoing reasons, the Court finds no merit in Petitioner's allegations about his trial attorney. Even if defense counsel's performance was deficient, the evidence against Petitioner was substantial, and there is not a reasonable probability that the outcome of the case would have been different but for defense counsel's alleged errors and omissions. Thus, the allegedly deficient performance did not prejudice the defense, and appellate counsel was not ineffective for failing to raise a claim about trial counsel in the appeal of right.

### 3. The Trial Judge

Petitioner's fifth claim alleges that the trial judge was biased against him. Petitioner maintains that, throughout trial, the trial court expressed annoyance with defense counsel and criticized him in front of the jury, while bolstering the prosecutor in the jurors' eyes.

The transcript of trial indicates that both the prosecutor and defense counsel raised many objections during the examination and cross-examination of witnesses. These objections and the contentious relationship between the two attorneys resulted in the trial court having to admonish both attorneys and to make numerous rulings on

evidentiary matters.  The trial court ruled in the prosecutor's favor many times, but at other times, the court ruled in Petitioner's favor.  While the trial court may have become impatient at times, Petitioner has failed to show that "there was bias, or such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused." *Ungar v. Sarafite*, 376 U.S. 575, 588 (1964).  The trial court's conduct simply was not "so extreme as to display clear inability to render fair judgment," or "a deep-seated favoritism or antagonism" that made fair judgment impossible.  *Liteky v. United States*, 510 U.S. 540, 551, 555 (1994).  Consequently, appellate counsel was not ineffective for failing to assert a judicial-bias claim.

### 4.  The Prosecutor

The sixth claim alleges that the prosecutor's conduct deprived Petitioner of due process of law and a fair trial.  Specifically, Petitioner claims that the prosecutor improperly (1) commented on defense counsel's remark that the victim was not a debutante, (2) confronted one of Petitioner's witnesses with her prior "bad acts," (3) used a rebuttal witness to introduce evidence that should have been presented in the prosecution's case in chief, and (4) adopted the persona of the victim during her opening statement, sought sympathy for the victim, and vouched for her own evidence.

The prosecutor's objection to defense counsel's comment about the victim not being a debutante may have been unnecessary or misplaced, but one prospective juror subsequently stated that defense counsel's comment about the victim not being a debutante caused him to have sympathy for the victim.  The trial court then excused that person and two other prospective jurors who claimed that their judgment would be

affected by sympathy for the victim. (Tr. Nov. 16, 1999, at 67-73.) Thus, Petitioner ultimately benefitted from the prosecutor's objection to defense counsel's comment.

Later in the trial, the prosecutor asked Petitioner's mother, Verenette Wilson, whether she had been convicted of anything. When Ms. Wilson denied having a criminal record, the prosecutor asked about some "bad check cases." Even if the question was improper, Ms. Wilson handled it well, by stating that she paid off one or more bad-checks, did not go to court for them, was not convicted of anything, and was not ashamed of the incidents. (Tr. Nov. 23, 1999, at 25, 48-49.) Any prejudice to the defense was minimal.

The prosecutor produced a rebuttal witness, Sharnay Miller, who testified that Petitioner was in Detroit on the dates that his alibi witnesses said he was on his way to, or staying in, New York. (*Id.* at 57.) Petitioner claims that the witness provided other prejudicial testimony, but he admits that the evidence could have been elicited during the prosecution's case in chief. Thus, there was no prejudice.

The prosecutor's conjecture about what the deceased victim might have been thinking before the shooting was not improper (Tr. Nov. 17, 1999, at 18), and Petitioner has not pointed to any specific instances of vouching or eliciting sympathy for the victim. Even if the prosecutor's comments were improper, the trial court informed the jurors that the attorneys' opening statements and closing arguments were not evidence, but merely efforts to help them understand the case. (*Id.* at 7-9.)

In conclusion, none of the alleged errors rose to the level of prosecutorial misconduct. The prosecutor's conduct either was proper or the alleged improprieties were not so flagrant as to require a new trial. Appellate counsel therefore was not

ineffective for failing to raise Petitioner's prosecutorial-misconduct claim in the appeal of right.

### 5. The Jury Instructions

### a. Usurping the Jury's Role

The seventh habeas claim alleges that the trial court's jury instructions deprived Petitioner of his right to a properly instructed jury and a fair trial. Petitioner contends that the trial court interfered with the jury's power to be lenient by stating that, if the prosecution proved all the elements of the crime beyond a reasonable doubt, the defendant would be guilty, even if the jurors thought that the prosecutor did not prove something they thought she should prove. The trial court went on to say,

> It's not what you think should be proven. It's what the law requires be proven and I'll tell you all the parts or elements and how many there are, but those parts or elements are the things that must be proven beyond a reasonable doubt, all of them. Nothing more. Nothing less.

(Tr. Nov. 15, 1999, at 120.) These comments occurred during *voir dire*, and they merely conveyed to the jury that the court was responsible for stating what the law was and that the jurors' duty was to apply the law and determine whether the prosecutor proved every element of the offense beyond a reasonable doubt. The comments did not usurp the jury's role.

### b. The Instruction on Second-Degree Murder

Petitioner contends that the trial court read an incomplete and erroneous instruction on second-degree murder, but he has not explained how the instruction was incomplete or erroneous. The Court therefore deems that claim abandoned.

### c. The Failure to Instruction on Manslaughter

-16-

Petitioner alleges that the trial court should have instructed the jury on manslaughter as a lesser-included offense of second-degree murder. This claim is not procedurally defaulted, because Petitioner raised the claim in the appeal of right. The Michigan Court of Appeals, moreover, adjudicated the merits of the claim and concluded that the trial court properly refused to instruct on manslaughter because the evidence did not support a conviction on that offense.

Petitioner's claim is not cognizable on habeas review, even though it is not procedurally defaulted, because the Constitution does not require the giving of jury instructions on lesser-included offenses in non-capital cases, such as this one. *See Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980); *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (citing *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990) (*en banc*)). "[F]ailure to instruct on a lesser included offense in a noncapital case is not 'such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.'" *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002) (quoting *Bagby*, 894 F.2d at 797). Petitioner therefore is not entitled to relief on his claim that the trial court should have instructed the jury on manslaughter.

### 6. Weight and Sufficiency of the Evidence

The eighth and ninth claims challenge the weight and sufficiency of the evidence at trial. Petitioner points out that he presented three witnesses in support of his alibi defense and that the State's rebuttal witness did not rebut his witnesses' testimony because the rebuttal witness was unable to say where Petitioner was on the day of the

shooting. Petitioner also notes that there was no physical evidence connecting him to the crime and no evidence that he said he intended to harm anyone.

The elements of second-degree murder are "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v. Smith*, 731 N.W.2d 411, 414-15 (Mich. 2007). Witnesses testified at Petitioner's trial that Petitioner planned to shoot up the house on Faircrest Street. He was seen with a gun at the time, and less than a minute after the house was fired upon, he was observed cruising by the house. He had a motive for shooting up the house (competition among drug dealers), and there was evidence that he used aliases and disappeared from Detroit after learning that Ms. Lewis had died from the shooting.

The jury could have inferred from the evidence, taken in the light most favorable to the prosecution, that Petitioner participated in the shooting and that he possessed the required state of mind, which is "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v. Goecke*, 579 N.W.2d 868, 878 (Mich. 1998) (citing *People v. Aaron*, 299 N.W.2d 304 (Mich. 1980)). Malice may "be inferred from the use of a deadly weapon" and from "evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm." *People v. Carines*, 597 N.W.2d 130, 136 (Mich. 1999).

The evidence was sufficient to support Petitioner's murder conviction. Therefore, appellate counsel was not ineffective for failing to raise Petitioner's claims about the weight and sufficiency of the evidence. Even if Petitioner's claim about the weight of the

evidence were not procedurally defaulted, that claim is not cognizable on habeas review because it is a state-law argument," and "a federal court is only allowed to review issues of federal law in a habeas proceeding." *Nash v. Eberlin*, 258 Fed. Appx. 761, 764 n.4 (6th Cir. 2007).

### 7. Missing *Res Gestae* Witnesses

The tenth claim alleges that the trial court erred (1) by finding that the prosecution used due diligence to produce Lisa Ward for trial and (2) by refusing to grant a due diligence hearing when the prosecution failed to produce Earnest Dickerson. Under state law, due diligence entails doing "everything reasonable, not everything possible, to obtain the presence of *res gestae* witnesses." *People v. George*, 342 N.W.2d 908, 910 (Mich. Ct. App. 1983). "The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, and not whether more stringent efforts would have produced it." *People v. Bean*, 580 N.W.2d 390, 393 (Mich. 1998).

Police Officer Ernest Wilson testified at the due diligence hearing in state court that he attempted to find Lisa Ward by checking with utility companies, the Family Independent Agency, morgues, and jails. He also contacted other witnesses, who informed him that Ms. Ward was a homeless prostitute. Ms. Ward's own mother did not know where to find her daughter; in fact, she had not seen Ms. Ward in approximately one year.

The Court concludes from Officer Wilson's testimony at the hearing that the trial court did not err in finding Officer Wilson was diligent in his efforts to find Ms. Ward. As for Earnest Dickerson, defense counsel admitted that Dickerson was not an endorsed

witness and that the prosecution did not have to produce him in their case in chief.  (Tr. Nov. 15, 1999, at 4-5.)  The trial court therefore did not err in its handling of *res gestae* witnesses Lisa Ward and Earnest Dickerson, and appellate counsel was not ineffective for failing to raise the issue on appeal.  Even if Petitioner's claim about the missing witnesses were not procedurally defaulted, the claim raises a state-law issue, which is not cognizable on habeas review.  *Johnson v. Hofbauer*, 159 F. Supp.2d 582, 601 (E.D. Mich. 2001).

### 8.  The Rebuttal Witness

The eleventh habeas claim alleges that the trial court deprived Petitioner of due process by allowing the prosecutor to use a rebuttal witness (Sharnay Miller) to interject prejudicial and irrelevant evidence on collateral matters.  Petitioner concedes, however, that this evidence could have been elicited during the prosecution's case in chief.  Thus, there was no prejudice to Petitioner as a result of the prosecution eliciting Ms. Miller's testimony on rebuttal, and appellate counsel was not ineffective for failing to raise this claim in the appeal of right.

For all the foregoing reasons, the Court concludes that Petitioner's claims are not clearly stronger than the issues his first appellate attorney raised on direct review.  Even if counsel's performance were deficient, there is not a reasonable probability that Petitioner would have prevailed if counsel had raised the claims in the appeal of right.  Accordingly, appellate counsel was not ineffective and cannot be deemed "cause" for Petitioner's procedural default.

### C.  Prejudice; Miscarriage of Justice/Actual Innocence

The Court need not determine whether Petitioner was prejudiced by the alleged constitutional errors, because he has failed to show "cause" for his procedural default. *Willis v. Smith*, 351 F.3d at 746 (citing *Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000)). The narrow exception for fundamental miscarriages of justice is reserved for the extraordinary case in which the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Murray v. Carrier*, 477 U.S. at 496.

Petitioner alleges in his twelfth and final claim that he is innocent of the murder for which he is incarcerated. Although "a claim of 'actual innocence' is not itself a constitutional claim," *Herrera v. Collins,* 506 U.S. 390, 404 (1993), the cause and prejudice requirements for procedural default may be overlooked and habeas relief granted "[i]f a petitioner presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust v. Zent*, 17 F.3d 155, 162 (6th Cir. 1994) (citing *Murray v. Carrier*, 477 U.S. at 496). "To be credible, such a claim requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A habeas petitioner must show that, more likely than not, no reasonable juror would have convicted him in light of new evidence. *Ross v. Berghuis*, 417 F.3d 552, 556 (6th Cir. 2005) (citing *Schlup*, 513 U.S. at 327). Stated differently, the petitioner must show that, "in light of . . . new evidence . . . , more likely than not any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006).

Petitioner has not presented the Court with any new and reliable evidence in support of a claim of actual innocence, and there was substantial evidence at trial that he was responsible for the murder of Latesha Lewis. Thus, this case is not one of the rare and extraordinary cases in which a claim of actual innocence excuses a procedural default or warrants a new trial.

To summarize, all of Petitioner's claims, except for the claim about the lack of a jury instruction on manslaughter and the claim about appellate counsel, could have been raised in the appeal of right. Petitioner's failure to raise his claims in the appeal of right violated Michigan Court Rule 6.508(D). The state courts relied on Rule 6.508(D) to deny relief, and Petitioner has not shown cause for his procedural error. Nor has he shown that a miscarriage of justice will occur as a result of the Court's failure to review his claims on their merits. Thus, Claims I through XI, with the exception of the claim about the lack of a jury instruction on manslaughter, are procedurally defaulted. Petitioner's twelfth claim, which alleges actual innocence and ineffective assistance of appellate counsel, lacks merit for the reasons given above.

## III. CONCLUSION

The majority of Petitioner's claims are procedurally defaulted, and the state appellate court's decision on Petitioner's claim about the lack of a jury instruction on manslaughter was not contrary to, or an unreasonable application of, Supreme Court precedent. Accordingly,

**IT IS ORDERED** that the petition for a writ of habeas corpus [Dkt. #1] is **DENIED**. The Court nevertheless **GRANTS** in part a certificate of appealability because reasonable jurists could debate whether the Court's procedural-default analysis is

correct and whether the petition states a valid claim of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(b)(3).

The only claim on which the Court declines to grant a certificate of appealability is Petitioner's claim about the lack of a jury instruction on manslaughter. That claim is not cognizable on habeas review, and reasonable jurists would not find the Court's procedural ruling on that issue debatable or wrong. Nor would reasonable jurists find that Petitioner has asserted a valid claim of the denial of a constitutional right.

DATED: April 15, 2010                    **s/ Anna Diggs Taylor**
                                          ANNA DIGGS TAYLOR
                                          UNITED STATES DISTRICT JUDGE

---

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on April 15, 2010.

James Everett, #359049
Thumb Correctional Facility
3225 John Conley Drive
Lapeer, MI 48446                    s/Johnetta M. Curry-Williams
                                     Case Manager